JOSÉ FERNÁNDEZ RODRÍGUEZ, demandante y apelante, *v.* ALONSO RIERA & CO. y POLICARPIO MARRERO, demandados y apelados.

No. 4569.—*Sometido:* Marzo 18, 1930. *Resuelto:* Julio 15, 1930.

*Adrián Agosto,* abogado del apelante; *Feliú & La Costa,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se trata de un caso de tercería de bienes inmuebles. Alonso Riera y Co., Inc., en pleito que siguiera contra Policarpo Marrero embargó ciertas casas, situadas en el pueblo del Dorado, como de la propiedad del demandado, y dictada sentencia a su favor fué anunciada la venta en pública subasta de las casas para el 7 de septiembre de 1925. El día 2 del propio mes y año José Fernández inició este pleito alegando que las casas en cuestión eran suyas por haberlas comprado al dicho Policarpo Marrero por escritura pública otorgada el 19 de mayo de 1920, habiendo adquirido luego, el 11 de octubre de 1921, también por escritura pública, del municipio del Dorado, los solares en que se encuentran enclavadas.

Contestó el demandado Alonso Riera & Co., Inc., negando que el tercerista fuera dueño de las casas porque Marrero se las había "traspasado" y no "vendido" y alegando como "defensas especiales" que la escritura de traspaso era nula, que el tercerista le había causado perjuicios por valor de doscientos dólares, que debía dejarse sin efecto el *injunction* que paralizó la subasta, y que el tercerista debía ser condenado en costas. La contestación no contiene súplica. Parece que fué sustituída por las llamadas "defensas especiales."

Fué el pleito a juicio, ambas partes practicaron su prueba y la corte finalmente dictó sentencia declarando sin lugar la demanda en cuanto a las casas. Los solares se estimaron debidamente adquiridos.

No conforme el tercerista, apeló, señalando en su alegato la comisión de cuatro errores, cometidos, a su juicio, por la corte: 1, al considerar válido el embargo practicado; 2, al separar en su resolución las casas de sus solares, y 3 y 4, al apreciar la prueba.

No nos detendremos en el análisis y resolución de los dos primeros errores, los últimos, que guardan relación con el resultado de la prueba, se cometieron y llevan consigo la revocación de la sentencia.

Para dictar ésta la corte declaró probado que la venta de Marrero al tercerista Fernández era simulada y que el verdadero dueño de las casas era y continuó siendo Marrero y no Fernández.

En su relación del caso y opinión la corte resume las pruebas practicadas y luego dice:

"La primera contradicción que aparece de la prueba del deman· dante es que José Fernández Rodríguez nos dice que pagó el importe de esas casas en el mismo acto de firmarse la escritura, en dinero, en varias partidas. Esto está controvertido por la propia escritura y por la declaración de Policarpo Marrero. (Siguen citas legales.)

"Aparece además que esta transacción se llevó a cabo cuando Policarpo Marrero tuvo conocimiento de que ciertas reclamaciones pendientes con la casa de Riera iban a efectuarse. (Siguen citas legales.)

"Aparece además que esta venta era un traspaso o cesión de todas las propiedades que tenía Policarpo Marrero, y que lo hizo para satisfacer una deuda que según él alega tenía pendiente con el Sr. Fernández. (Siguen citas legales.)

"De la prueba en este caso no aparece debidamente aclarado cuáles fueron las relaciones existentes entre José Fernández Rodríguez y Policarpo Marrero, en virtud de las cuales Policarpo Marrero adeudara al Sr. Fernández la suma de $6,500.00 habiendo declarado dicho señor Fernández que esta deuda no era una contraída con la sociedad mercantil sino particular, y habiendo declarado Marrero que sus deudas con Fernández se debían primeramente a sus negocios, y después, al declarar en "rebuttal', manifestó además que éstos eran compromisos que tenía con Fernández, hechos sin previo recibo, y que cuando necesitaba dinero, lo iba a buscar a casa del Sr. Fernández, o en distintos sitios, recibiendo cantidades de cuatro a quinientos dollars en esa forma y en distintas ocasiones, aunque no se explicó el motivo de dichos préstamos. Todo esto nos parece dudoso, y en manera alguna, aun aceptando dicha prueba, se probó hasta cuánto llegaron esas cantidades, y por qué conceptos específicos se habían facilitado en esa forma. (Siguen citas legales.)

"Deseo además hacer constar que José Fernández es miembro de una mercantil que se dedica a la venta de provisiones, y no vemos qué transacciones pudieran haber ascendentes a la suma de seis mil quinientos dólares entre dicho Sr. Fernández y Policarpo Marrero, cuando el negocio a que éste se dedicaba era distinto al de la referida mercantil, y cuando no aparece que estas cantidades fueran tomadas a la sociedad, sino personalmente a uno de sus socios, que no era un banco ni se dedicaba al negocio de préstamos. (Siguen citas legales.)

"Aparece además que Policarpo Marrero ha retenido la posesión de estas fincas, y que según la declaración de José Fernández, lo tiene empleado para la administración de las mismas. (Siguen citas legales.)

"Aparece además que Policarpo Marrero ha pagado las contribuciones de estas fincas, y este hecho es considerado como otro elemento de fraude. (Siguen citas legales).

"Todas éstas son presunciones que surgen de todos estos hechos, las cuales, desde luego, pudieron haber sido controvertidas con prueba, según especifica el mencionado volumen. (Siguen citas legales).

"Además, deseo llamar la atención hacia lo siguiente:

"Se dice en el citado volumen que cuando existen numerosos signos de fraude, le incumbe a la parte que desea establecer la validez de la transferencia, el controvertirlos por medio de preponderancia de prueba. Entiendo que esto no se ha hecho en este caso, y que no se ha probado con claridad lo justificado de la pretensión del demandante; y, por el contrario existen numerosas circunstancias que indican claramente la intención fraudulenta del traspaso.

"Aparece de la prueba que José Fernández compró los solares en que están enclavadas estas casas en el Municipio del Dorado y así fué admitido por los demandados. Pero habiéndose probado la forma en que éstas fueron adquiridas, entiendo que la mera adquisición del solar con fecha posterior por el demandante no convalida la transacción anterior, ni es por sí sola suficiente para que se eche a un lado toda la prueba aportada en cuanto a la mencionada transacción."

Quizá la conclusión a que llegara la corte de distrito sea cierta; quizá nuestra intervención sea contraria a la justicia absoluta, pero tras un estudio de las alegaciones y las pruebas nos vemos obligados a revocar la sentencia apelada y a dictar otra declarando la demanda con lugar.

El único testigo que declaró por la parte actora fué el

propio tercerista. Lo hizo con vista de la escritura pública otorgada el 19 de mayo de 1920, por virtud de la cual Marrero le vendió las casas. Copiamos del récord:

"La venta de dichas seis descritas fincas se verificó por la suma de $6,500, que los vendedores esposos Marrero-Hernández, declararon y confesaron tener recibidos del comprador Sr. Fernández Rodríguez antes del acto de la venta y a su entera satisfacción y contento, por cuyo motivo le otorgaron en dicho documento de la venta, solemne y eficaz carta de pago."

La escritura se presentó en el registro. Su inscripción fué negada el 15 de agosto de 1921, por no aparecer inscritas las fincas a favor del vendedor.

Continuó declarando el tercerista con vista de otra escritura pública otorgada el 11 de octubre de 1921 por virtud de la cual aparece comprando los solares en que están enclavadas las casas al Municipio del Dorado. En la escritura, que fué inscrita en el registro de la propiedad, se hace constar que se venden a Fernández los solares por ser el dueño de las casas en ellos edificadas y por consiguiente usufructuario de los mismos.

A virtud de ciertas preguntas que se hicieron al tercerista, su abogado introdujo como prueba el pleito seguido por Alonso Riera y Co., Inc., contra Marrero en el cual se embargaron las casas para responder de la sentencia que pudiera dictarse. De él resulta que el embargo se trabó en diciembre de 1922 y que en la demanda, radicada el 19 de diciembre de 1922, se cobran a Marrero $1,772.70, por concepto de mercancías compradas por el demandado al demandante desde diciembre de 1921.

La parte apelada al discutir el caso invoca a su favor el artículo 40 de la Ley Hipotecaria, que, en lo pertinente, dice:

"Artículo 40.—Se podrán revocar, conforme a lo declarado en el artículo anterior, y siempre que concurran las circunstancias que en él se determinan:

❋      ❋      ❋      ❋      ❋      ❋      ❋

"5. Cualquier contrato en que el deudor traspase o renuncie expresa o tácitamente un derecho real.

"Se entenderá que no media precio ni su equivalente en los dichos contratos cuando el Notario no dé fe de su entrega, o si, confesando los contrayentes haberse ésta verificado con anterioridad, no se justificare el hecho o se probare que debe ser comprendido en el caso 3 del presente artículo.".

El procedente artículo 39, expresa:

"Artículo 39.—Se entenderá enajenación a título gratuito en fraude de acreedores, en el caso 1, núm. 2 del artículo 37, no solamente la que se haga por donación o cesión de derecho, sino también cualquiera enajenación, constitución o renuncia de derecho real que haga el deudor en los plazos respectivamente señalados por las leyes comunes, y las de comercio en su caso, para la revocación de las enajenaciones en fraude de acreedores, siempre que no haya mediado precio, su equivalente u obligación preexistente y vencida."

Tal precepto no es aplicable a este caso. Cuando la venta de Marrero al tercerista se verificó, no se había entablado la demanda, ni se había originado la cuenta corriente que dió origen a la misma. La venta fué en mayo de 1920, la cuenta se originó en diciembre de 1921, y la demanda se interpuso en diciembre de 1922. ¿Cómo puede sostenerse que la venta se verificó en fraude del acreedor Alonso Riera y Co., Inc.?

Creemos que el tercerista con su declaración y las escrituras públicas en que se basó, presentó un caso *prima facie* fuerte al dominio de las cosas embargadas, y que no habiendo demostrado Alonso Riera y Co., Inc., sobre quién recayó desde ese momento el peso de la prueba, que fuera acreedor al tiempo de verificarse la venta, carecía de acción para pedir que se declarara sin efecto por haberse verificado en fraude de acreedores.

El alegato de la parte apelada es muy hábil. Elude bien las cuestiones, pero comprendiendo la importancia de ésta sostiene como una proposición que "cuando Marrero vendió al apelante, le debía dinero a la apelada." Y como prueba

de ello invoca solamente el siguiente dicho de Marrero declarando como testigo:

"Que cuando le vendió las casas a Don Pepe Fernández" (el apelante) "tenía negocios con Alonso Riera" (esta apelada) "a quien le debe algún dinero, no recuerda la cantidad, que tenía una cuenta corriente con él."

Esas palabras aun examinadas aisladamente no tienen el alcance que les atribuye el apelado. Dijo Marrero que debe. Ello es en el momento en que declaraba, año de 1926. El que tuviera negocios con Alonso Riera y Co., Inc., cuando vendió las casas, no implica necesariamente que Alonso Riera fuera su acreedor. Pero si las palabras se examinan a la luz de lo alegado en su demanda por el propio Alonso Riera y Co., Inc., se verá que la cuenta que se cobra se originó más de año y medio después de la venta de las casas.

Todo el edificio que se trató de levantar por el demandado y que la corte de distrito consideró levantado, cae, pues, por su base.

Esto basta para revocar la sentencia, pero deseamos agregar que el apelante contesta cada una de las conclusiones del juez sentenciador que, como constitutivas de elementos de fraude, expuso en su relación del caso y opinión, refiriéndose a lo que realmente demuestran los autos y unas veces destruye la conclusión por completo y otras explica la situación de modo satisfactorio. No consideraremos aquí sus argumentos, porque tendríamos que alargar demasiado e innecesariamente esta opinión. De haber sido Alonso Riera y Co., Inc., un acreedor con derecho a impugnar la venta por haberse verificado en fraude de acreedores y de haber demostrado además que estaba obligado a ello por carecer de todo otro recurso legal contra el deudor directo para obtener la reparación del perjuicio (Art. 1262, Código Civil), la prueba presentada no hubiera sido bastante para concluir que el fraude se había en efecto perpetrado.

*Debe revocarse la sentencia recurrida y dictarse otra*

*declarando la demanda con lugar, sin especial condenación de costas.*

El Juez Asociado Señor Texidor no intervino.